## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| TeleSolv Consulting, LLC<br>1325 G Street, NW<br>Suite 500<br>Washington, D.C. 20005 | ) ) ) ) ) | |
| Plaintiff | ) ) | |
| v. | ) ) | Civil Case No. _____ |
| U.S. Small Business Administration<br>409 – 3rd Street, SW<br>Washington, D.C. 20416 | ) ) ) ) ) | |
| Defendant | ) ) | |
| _____ | ) | |

## VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF, DECLARATORY JUDGMENT, AND DAMAGES

COMES NOW Plaintiff, TeleSolv Consulting, LLC, ("TeleSolv" or "Plaintiff"), by and through undersigned counsel, who files this verified complaint and states as follows:

## I

## NATURE OF THE ACTION

1.  This is an action against the U.S. Small Business Administration ("SBA"), a federal agency, in which TeleSolv seeks a Temporary Restraining Order, a Preliminary and Permanent Injunction, to enjoin SBA from suspending Plaintiff from the SBA's 8(a) Business Development ("BD") Program.  On September 27, 2013 SBA sent TeleSolv a "Letter of Intent to Terminate," alleging that Plaintiff had violated certain regulations pertaining to the 8(a) Program.  SBA gave TeleSolv 30 days from the date of receipt of the Letter of Intent to Terminate to submit, in writing, information which would eliminate the grounds for the proposed termination or explain why the proposed grounds should not justify termination.

2. Plaintiff sent SBA a timely letter explaining in significant detail why all of Defendant's allegations were incorrect and why TeleSolv should not be terminated from the SBA 8(a) BD Program. Plaintiff never heard back from SBA, which, as of the date of this Complaint, has been almost a year since TeleSolv submitted its Response to SBA's Letter of Intent.  Meanwhile, TeleSolv continued to compete for contracts that were set-aside for competition among 8(a) contractors only.  One such contract was that solicited by the U.S. Environmental Protection Agency ("EPA"), SOL-R7-14-00011 for "Records Center Services" with a contract value of over $3.5 Million. On October 1, 2014, TeleSolv was notified that it had submitted the lowest priced offer, but that it did not win the contract because it did not meet certain technical requirements (a point with which Plaintiff strongly disagrees and would file a bid protest, if allowed) *and* because EPA's contracting officer was informed by SBA that TeleSolv was ineligible for contracts awarded under the 8(a) BD Program.

3. The next day TeleSolv received a letter from the SBA dated September 23, 2014 notifying Plaintiff that it had been suspended from further participation in the 8(a) BD Program, including suspension of contract support and all other forms of 8(a) BD assistance. The letter also stated that the suspension is effective as of the date of the issuance of the notice, and that it remains in effect until the matter of TeleSolv's termination form the 8(a) Program is finally decided or until SBA's Office of Hearing and Appeals ("OHA") lifts the suspension in response to an appeal filed by Plaintiff.  However, even if Plaintiff appeals to OHA a favorable decision would come too late for Plaintiff because its tenure in the 8(a) Program expires on November 14, 2014.  Meanwhile, Plaintiff is awaiting the results of other contracts that it is competing for in the 8(a) BD Program. If the suspension is not enjoined, Plaintiff will not only be prohibited from filing a bid protest on the EPA contract, but will not be able to be awarded other contracts as well.

4. Meanwhile, the SBA has no justifiable reasons for terminating TeleSolv from the 8(a) Program.  The Suspension Letter indicates that SBA did not even consider Plaintiff's explanations to SBA's allegations in its Letter of Intent to Terminate. The Suspension Letter is in essence a final decision issued by the SBA, because Plaintiff's pursuit of any administrative remedies would be futile.  SBA's final decision is arbitrary and capricious under 5 U.SC. §§ 701 *et seq.* and SBA should be temporarily, preliminarily and permanently enjoined from suspending Plaintiff from the 8(a) BD Program. This Court should also declare that Plaintiff has not violated any regulations with regard to the 8(a) Program and should also judicially add time to TeleSolv's participation in the 8(a) BD Program in the amount of days from September 23, 2014, the date of suspension, to the date of this Court's order lifting the improper suspension.

5.  Defendant's decision to unjustifiably suspend Plaintiff is causing TeleSolv to suffer continuous harm in being unable to presently compete for Federal government contracts set aside for 8(a) contractors and is precluding Plaintiff from being awarded pending contracts it will win . Plaintiff is seeking a declaratory judgment, temporary, preliminary and permanent injunctive relief, monetary damages and attorney's fees.

## II

## JURISDICTION AND VENUE

3.  This Court has jurisdiction over this matter because: the case involves an issue involving a federal statute; the case involves a matter under the Constitution of the United States pursuant to 28 U.S.C. § 1331; it is a matter involving an agency of the federal government; Venue is proper under 28 U.S.C .A. § 1391(e) because Defendant, which is an agency of the United States, resides in this district.  Plaintiff also resides in this district, and the cause of action arose in this district.

**III**

**PARTIES**

4.  Plaintiff TeleSolv is a limited liability company organized under the laws of the District of Columbia in 2002 with its principal place of business in the District of Columbia.  TeleSolv's principle business office is located at 1325 G Street, NW, Suite 500, Washington, D.C. 20005 TeleSolv is in the business of providing primarily management consulting services; records management; FOIA processing support; web development and management; data analysis; training; technical writing; and customer service support. TeleSolv contracts with a number of federal government agencies.  The company's President and CEO is David Vincent.

5.  The U.S. Small Business Administration ("SBA") is an agency of the United States Government, located at 409 Third Street, SW, Washington, D.C.  20416.  SBA administers the 8(a) BD Program.

**IV**

**BACKGROUND**

6.  SBA's Section 8(a) program is a business development program for small businesses owned by individuals who are socially and economically disadvantaged.  Qualifying individuals may apply to the SBA, and if accepted into the program, they are eligible to compete for contracts set-aside exclusively for those firms admitted as participants in the 8(a) BD Program.

7.  One of the requirements for being "economically disadvantaged" individuals is that for initial 8(a) BD eligibility, the net worth of an individual claiming disadvantage must be less than $250,000.  For continued 8(a) BD eligibility after admission to the Program, net worth must be less

than $750,000.00.  In determining such net worth SBA excludes the ownership interest in the applicant's business and applicant's equity in his/her primary personal residence.

8.    A company selected for the 8(a) BD Program must annually certify its continued eligibility for the Program and must provide financial and other information to SBA.  A company may remain in the program for a maximum of nine years if it continues to meet the eligibility requirements throughout the period.

9. TeleSolv was admitted to the 8(a) BD Program on November 14, 2005.  The company enjoyed good standing with SBA and had seven (7) successive and successful Annual Reviews. All of that changed suddenly when Mr. Vincent received a Letter of Intent to Terminate TeleSolv from the 8(a) BD Program ("Letter of Intent"), dated September 27, 2013, from the Washington Metropolitan District Office  ("District Office") of SBA.

10.    In the Letter of Intent, the District Office indicated that Defendant intended to terminate TeleSolv from the 8(a) BD Program for what it described as "good cause, " pursuant to 13 C.F.R. § 124.303(a).  The District Office gave three reasons for its decision, all of which have no merit.

a. The first reason was that Mr. David Vincent ("Mr. Vincent"), President of TeleSolv, misrepresented his firm and personal net worth for admission to the 8(a) BD program. The District Office claimed that in Mr. Vincent's initial 8(a) BD Program application he stated that the investment properties were fixed assets of his business.  SBA alleged that the properties were directly owned by Mr. Vincent and based its "conclusion" on the Deeds of Trust for each property. However, there were no properties listed in the Letter of Intent, nor were there any property values listed nor did the District Office refer to any Deeds of Trust for any particular property.  Thus, the

District Office's allegation failed to identify specific information to demonstrate how Mr. Vincent misrepresented his firm and personal net worth for admission to the 8(a) BD Program.

b. The second reason was that Mr. Vincent's personal net worth exceeded $750,000 and , thus, it was determined that he no longer met the economic disadvantaged status for continued 8(a) BD eligibility.  However, the District Office based its "conclusion" on the "present market value for each investment property was not accurately stated and found to be in significant excess value than what has been reported."  However, the District Office did not identify what those investment properties were nor did it explain how it determined the "present market value."

c. The District Office's third and final reason is for what SBA alleged as Mr. Vincent's "pattern of failure to make required submissions or responses to SBA in a timely manner, including a failure to provide required financial statements, requested tax returns, reports, updated business plans, information requested by SBA's Office of Inspector General, or other requested information or data within 30 days of the date of request," in violation of 13 C.F.R. 124.303(a)(7).  However, the Letter of Intent failed to identify any document or information requested from TeleSolv that was not submitted in a timely manner.  The District Office also did not identify any occasion where Plaintiff failed to provide required financial statements, requested tax returns, updated information or any other information required under the afore-mentioned regulation.

11.  The District Office gave TeleSolv 30 days from the date of receipt of the Letter of Intent to respond.  Plaintiff timely responded to Defendant's Letter of Intent in a letter dated October 27, 2014. ("Response").  In Plaintiff's Response, it gave the following explanations to the District Offices allegations:

a. As to the first allegation regarding "misrepresentation" of investment properties allegedly "directly owned" by Mr. Vincent, Plaintiff pointed out that some properties that Mr. Vincent had personally owned had been conveyed to a Trust.  Plaintiff provided documents to the District Office which demonstrated on their face that the subject properties were not owned by Mr. Vincent, and that they had been conveyed to the Trust more than two years before Mr. Vincent had even applied for admittance into the 8(a) BD Program.  Plaintiff also pointed out that the District Office's reliance on Deeds of Trust is not reliable as a sole basis for determining ownership since a Trust, to which ownership is conveyed, can be established *after* the deed is recorded.  This was the case for at least one of the properties in question.  Plaintiff then listed the properties Mr. Vincent included in his SBA Form 413 (Personal Financial Statement) that it had submitted previously to the District Office and matched each investment property with its market value.  Mr. Vincent also explained how he reached the market value for each property.  Based upon the properties listed by Plaintiff and the value applied to them, there were no inconsistencies nor was there any misrepresentation by Mr. Vincent on his SBA Form 413.

b. As to the second reason in which the District Office claimed that Mr. Vincent's "adjusted net worth was determined to exceed $750,000.00," TeleSolv's Response accurately pointed out that the District Office did not submit "a shred of evidence" to support such contention. Plaintiff's Response also asserted that the District Office's claim that "the present market value for each investment property was not accurately stated and found to be in significant excess value than what has been reported," was not substantiated in the Letter of Intent by the District Office. Plaintiff pointed out without quantifiable evidence and the District Office's basis for asserting that the property values were in "significant excess value" he was unable to precisely identify the errors in the District Office's assessments.  However, Plaintiff once again went through every single property in question and demonstrated both ownership and the method used to determine property

value.  All of such properties added together, even if all of them were actually owned by Mr. Vincent, which all are not, the total value would still be only $373,500.00 -- well under $750,000.00.

      c.  With regard to the District Office's third and final reason – TeleSolv's supposed "pattern of failure to make required submissions or responses to SBA in a timely manner, including a failure to provide required financial statements, requested tax returns, reports, updated business plans, information requested by SBA's Office of Inspector General, or other requested information or data within 30 days of the date of request," in violation of 13 C.F.R. 124.303(a)(7) – Plaintiff specifically rebutted each individual allegation in the letter in the following manner:

      (1)  The District Office indicated that "[o]n May 23, 2013 TeleSolv was notified, via phone and email, of inaccuracies within your annual review package and requested corrections." However, as Plaintiff pointed out in its response that the Letter of Intent does not indicate  on what date such "corrections" were supposedly due and what date the "corrections" were actually submitted by Plaintiff.

      (2)  On June 5, 2013, the District Office claimed that it reviewed TeleSolv's resubmitted documentation and that TeleSolv was again notified of inaccuracies in its annual review package. However, once again, there is no date in the Letter of Intent which indicates on what date such inaccuracies were due and when TeleSolv in fact submitted corrections.

      (3) On June 13, 2013, a District Office representative met with Mr. Vincent to discuss the supposed discrepancies within in the annual review package, specifically SBA Form 413 and potential excessive withdrawals that the District Office allegedly identified

in TeleSolv's financial statement.  However, again, the Letter of Intent did not contain *any date* in which the District Office directed TeleSolv to take any action that was not taken.  In addition, Plaintiff pointed out in its Response that the District Office could not demonstrate any supposed "excessive withdrawals" on the part of Plaintiff.  (No such allegations were pursued either in the Letter of Intent or the Suspension Letter).

(4) On June 19, 2013, the District Office alleged that the updated SBA Form 413 was not signed and did not accurately match the supporting documentation.  However, there was no date specified in either SBA letter in which Plaintiff was required to perform an action that it did not perform.  In addition, Plaintiff pointed out in its Response that the District Office misrepresents the facts when it states that the updated SBA Form 413 was not signed.  As Plaintiff asserts in its Response, Mr. Vincent signed the document digitally, and, *after the fact*, the District Office informed him that it wanted a "wet signature," to which Mr. Vincent immediately complied.  Also, and contrary to the allegation of the District Office, the documents TeleSolv submitted to the District Office on June 19, 2013 did accurately match the updated SBA Form 413.  In addition, all of the additional documentation submitted by Plaintiff *after* June 19, 2013 supported the Annual Review package that was resubmitted on June 19, 2013.  There were no "inaccuracies."

(5)  On August 12-13, 2013, the District Office alleges that it sent and that TeleSolv received a letter stating that TeleSolv's annual review was found to be incomplete. In that letter the District Office actually *did* request that Plaintiff submit documentation by a deadline date of August 23, 2013.  Plaintiff asserts in its Response that TeleSolv complied by sending the requested information to the District Office on the due date, and Plaintiff's assertion is not rebutted by the District Office.

(6)  On August 22, 2013, the District Office alleges that Mr. Vincent met in person with a District Office representative to discuss what Defendant claims were "continued discrepancies" with TeleSolv's annual review package.  Defendant states that Plaintiff was sent a follow-up email detailing items that were being requested by the District Office. Plaintiff's Response points out, however, that the Letter of Intent conspicuously omits the fact that the District Office inserted a deadline date in the email that the information was due "no later than August 30, 2013."  TeleSolv's response was sent on August 23, 2013 – seven days before the due date.

(7)  On August 23, 2013 the District Office alleged that the documents that were received from Plaintiff were not correct and were not signed and dated.  However, Plaintiff's Response explains the discrepancy in the District Office's allegation.  Plaintiff, supported by attached emails to its Response, states that the documents were in fact digitally signed.  The District Office's August 22nd email did not explain that the District Office only wanted "wet signatures," because "our acting legal counsel SBA does not accept digital signatures."  Such instruction was in a District Office email sent and dated on August 23, 2014 and requested "wet signatures" by Friday, August 30, 2013 and TeleSolv's response was submitted by August 30, 2013.

(8) On September 10, 2013, the District Office alleges that Plaintiff's revised documents were received but the information provided in the personal financial statement was still not accurate.  However, Plaintiff's Response demonstrates the patent untruthfulness of the District Office's claim.  Plaintiff's Response shows in detail and with supporting documentation that the District Office has had accurate information, data and documents to confirm TeleSolv's continued eligibility in the 8(a) BD Program since June

19, 2013.  However, TeleSolv has never received a response from SBA to TeleSolv's letter, and it has been almost a year since the letter was sent – October 27, 2013.  The Suspense Letter does not indicate that TeleSolv's evidence was ever read, much less considered.  Thus, SBA made a decision that is either contrary to the evidence or that was not even considered as part of the evidence.

12.  Thus, none of the above indicates any "pattern of failure to make required submissions or responses to SBA in a timely manner …" as SBA alleges.  Plaintiff never received an SBA reply to its rebuttals.

13.  After Plaintiff submitted its Response to the District Office's Letter of Intent, it continued to pursue 8(a) contract opportunities.

14.  Plaintiff competed for an 8(a) contract solicited by the U.S. Environmental Protection Agency ("EPA"), SOL-R7-14-00011 for "Records Center Services" with a contract value of over $3.5 Million. On October 1, 2014, TeleSolv was notified in an email from the EPA contracting officer that TeleSolv had submitted the lowest priced offer, but that it did not win the contract because it did not meet certain technical requirements *and* because EPA's contracting officer was informed by SBA that TeleSolv was ineligible for contracts awarded under the 8(a) BD Program.

15.  At that time Plaintiff had no indication that it was not still a participant in the 8(a) BD Program and had no indication, prior to EPA's email, that EPA had had discussions with SBA about TeleSolv's eligibility status in the 8(a) BD Program.

16.  On the next day, October 2, 2014, TeleSolv received a "Notice of Suspension" letter from the SBA, dated September 23, 2014. ("Suspension Letter).  Such letter suspended Plaintiff from the 8(a) BD Program and stated that the suspension "is effective as of the date of the letter

and "remains in effect until the matter of your firm's termination from the 8(a) BD program is finally decided or until SBA's Office of Hearing and Appeals ("OHA") lifts this suspension in response to an appeal filed by you."  The Suspension Letter stated that the basis of the suspension was from "information showing a clear lack of program eligibility or conduct indicating a lack of business integrity exists, including where the concern or one of its principals submitted false statements to the Federal Government.  See 13 C.F.R. § 124.305(a)."  Such reason is arbitrary, capricious and contrary to law.

17.  Defendant's reasoning for alleging a "clear lack of program eligibility" is that Mr. Vincent exceeds the personal net worth requirement of $750,000.00.  Defendant's "conclusion" is based on a list of properties, listed for the first time in the Suspension Letter, and which SBA values as $2,833,230.00.  SBA admits that "[t]he ownership information of the listed properties was obtained from HUD-1's, Experian and LexisNexis," all of which are unreliable sources when compared with the sworn statement of Mr. Vincent as to the property values. SBA states the current market values of the properties "were obtained from Zillow." Not only is it unclear who "Zillo" is or what expertise such entity possesses in assessing property market values, but there is no indication that existing mortgages were factored into assessing the property values or the personal net worth of Mr. Vincent.  In addition, SBA states no reasons as to why Mr. Vincent's market value assessments were discounted.  As to Plaintiff's assertion that Mr. Vincent does not own some of the properties, SBA's makes a conclusory statement that "our review indicates that Mr. Vincent is the 100% beneficiary of the trusts and maintains control of the trusts and trustees." However, there is no indication of just what SBA's "review" consisted of.  SBA even includes Mr. Vincent's primary residence in determining his personal net worth in violation of 13 C.F.R. § 124.104(c)(2).  Moreover, the fact that SBA lists the properties for the first time with Defendant's own market value assessments, Plaintiff was not given the opportunity to rebut such assessments.

18.  SBA's claim that Plaintiff clearly lacked program eligibility is arbitrary, capricious and contrary to law because SBA failed to consider an important aspect of the issue and made conclusions that are not supported by the evidence before it.

19.  SBA also states as a basis for its suspension of Plaintiff from the 8(a) BD Program that Plaintiff submitted false information in its 8(a) BD application, in that Mr. Vincent did not "disclose that the investment properties were owned directly by Mr. Vincent and that "SBA concludes that not providing accurate information as an attempt to evade SBA regulations."  Such conclusion is arbitrary, capricious, and contrary to law and in violation of the very regulation Defendant claims to uphold, 13 C.F.R. 124.303(a)(1).  There is no indication whatsoever that SBA even reviewed, much less considered, evidence submitted by Plaintiff that was contrary to such conclusion.  In fact Plaintiff was not even shown a list of the properties in question until the Suspension Letter.  Even so, Plaintiff thoroughly rebutted Defendant's claims in its Response to the Letter of Intent.

20.  The Suspension Letter gives TeleSolv 45 days to appeal the Notice of Suspension to the SBA's Office of Hearings and Appeals.  However, such action is not a realistic remedy for Plaintiff because by the time its case is ruled upon, TeleSolv will have already graduated from the 8(a) BD Program.

21.  TeleSolv does not agree with EPA's assertion that it did not meet certain technical requirements of the Solicitation and would like to file a bid protest before the General Accountability Office ("GAO").  However, Plaintiff is precluded from doing so because TeleSolv would not have standing because of being suspended from the 8(a) Program.

22.  Plaintiff also has 8(a) contracts pending which it has competed for and is awaiting the results, and there are even more 8(a) contracts that TeleSolv had intended to compete for between now and its 8(a) graduation date of November 13, 2014.

23.  SBA has suspended Plaintiff from the 8(a) Program not only without "good cause" but without *any* cause. As a result, Plaintiff is unable to protest the contract it believes it should have won and will not be able to be awarded future contracts it has already competed for and might win.

24.  Plaintiff regards SBA's Suspension Letter as a deemed denial of TeleSolv's letter of response, dated October 27, 2013, to the District Office's Letter of Intent, dated September 27, 2013.  Thus, SBA's Suspension Letter is in effect a final decision and may be appealed from under the Administrative Procedure Act.

25.  Plaintiff is entitled to temporary, preliminary, and permanent injunctive relief because of its likelihood of success on the merits; its suffering of irreparable harm; the balance of harms favor Plaintiff and it is in the public interest to enjoin SBA's suspension action and it maintains the status quo.

26.  Accordingly, Plaintiff files this Complaint.

# V

## CAUSES OF ACTION

## COUNT I – ARBITRARY, CAPRICIOUS AND CONTRARY TO LAW

27.  Plaintiff incorporates paragraphs 1 through 26, as though fully set forth here.

28.  Based upon the facts above, Defendant violated the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 *et seq.*  The APA provides that the action of each authority of the

Government of the United States, which includes SBA, is subject to judicial review except where there is a statutory prohibition on review or where agency action is committed to agency discretion by law. In this case, there is no indication that Congress sought to prohibit or restrict judicial review of SBA actions.  Thus, a judicial review of the Defendant's decision to suspend TeleSolv from the 8(a) BD Program will demonstrate that SBA had no rational basis for such decision and that Defendant's decision  was arbitrary, capricious, an abuse of discretion, or not otherwise in accordance with law, pursuant to 5 U.S.C. 706 (2) of the APA.

29.  Defendant's decision to suspend of Plaintiff TeleSolv from the 8(a) BD Program was arbitrary, capricious and contract to law because SBA failed to consider an important aspect of the problem; offers an explanation for its decision that is not supported by the evidence before the agency; and offers explanations that are so implausible that they cannot be attributed to a difference in view.

## COUNT II – VIOLATION OF FEDERAL STATUTE

30.  Plaintiff incorporates paragraphs 1 through 29, as though fully set forth here.

31. In suspending Plaintiff from the 8(a) BD Program without good cause, or for any justifiable cause whatsoever,  SBA violated both the Small Business Act, 15 U.S.C. § 637(a), as well as the implementing federal regulations under that Act, namely 13 C.F.R. §§ 124.104(c)(2), 124.112(c)(2), 13 C.F.R 124.303(a)(1), and 13 C.F.R. 124.303(a)(2).

32.  By not considering the information submitted in Plaintiff's Response, SBA violated 13 C.F.R. § 124.303(a)(2) which requires SBA to consider any information submitted by an 8(a) contractor in response to a Letter of Intent to Terminate.

33.  SBA acted illegally by failing to timely respond to Plaintiff's Response to SBA's Letter of Intent.  According to 13 C.F.R. 124.304(c), SBA is required to act in a timely manner in processing early termination actions.  After almost one year, SBA has still not responded to Plaintiff's Response to Defendant's Letter of Intent, thus, prohibiting TeleSolv from timely pursuing its administrative appeals.

## VI

### IMPACT OF SBA's ACTIONS

34.  Plaintiff incorporates paragraphs 1 through 33, as though fully set forth here.

35.  The SBA's improper and unlawful actions have caused Plaintiff harm in being unjustly suspended from the 8(a) BD Program and made ineligible to be awarded or compete for 8(a) set-aside contracts during its remaining time as a participant in the Program.  Plaintiff is ineligible to be awarded 8(a) contracts which it competed for and for which it is awaiting the results. Plaintiff is unable to even file bid protests on contracts it should have been awarded.   TeleSolv suffers from loss of bid and proposal costs and lost profits from 8(a) contracts that it might potentially be awarded and bid and proposal costs from such contracts.  CS360 has also expended legal fees in challenging the SBA's action and faces the indefinite stigma of being suspended from the 8(a) program, though unjustifiably so.

### REQUEST FOR RELIEF

WHEREFORE, Plaintiff prays that this court:

1) Upon appropriate motion made by Plaintiff, enter a Temporary Restraining Order prohibiting SBA from suspending TeleSolv from the 8(a) BD Program for 14 days;

2) Upon appropriate motion filed by Plaintiff, enter a Preliminary Injunction against SBA prohibiting SBA from suspending TeleSolv until a trial of this matter.

3) Enter a permanent injunction against SBA enjoining Defendant from suspending Plaintiff from the 8(a) BD Program;

4) Enter a Declaratory Judgment finding that the SBA's decision suspending  Plaintiff from the 8(a) BD Program was arbitrary, capricious and contrary to law in violation of the Administrative Procedure Act;

5) Enter a Declaratory Judgment finding that the SBA's decision suspending Plaintiff from the 8(a) BD Program was in violation of the Small Business Act, 15 U.S.C. 637(a) and its implementing regulations;

6) Enter a Declaratory Judgment adding Plaintiff time in the 8(a) BD Program to an amount of days equal to the days from September 23, 2014, the date of the suspension, to the first Order of this Court prohibiting Plaintiff's suspension from the 8(a) BD Program;

7) Award Plaintiff $10,000 in maximum monetary damages under the Administrative Procedure Act; and, attorney's fees and costs under the Equal Access  to Justice Act;

8) Any other redress and relief that the Court deems appropriate.


Dated:  October 13, 2014                                        Respectfully submitted,


                                                       /s/Ralph C. Thomas III
                                                       Ralph C. Thomas III, DC Bar #256974
                                                       BARTON BAKER THOMAS & TOLLE LLP
                                                       1320 Old Chain Bridge Rd.
                                                       Suite 200
                                                       McLean, VA  22101
                                                       Telephone: (703) 448-1810
                                                       Fax: (703) 448-3336
                                                       Email:  rthomas@bbmtlaw.com

**VERIFICATION**

I, David Vincent, President of TeleSolv Consulting, LLC depose and say:

I am familiar with the facts relating to the foregoing Verified Complaint for Declaratory Judgment, Injunctive Relief and Damages.  I have read the foregoing Verified Complaint and know the contents thereof.  I have either first-hand knowledge or a reasonable basis for information and belief of each of the facts stated herein.  Of the facts stated for which I have first-hand knowledge, I believe them to be true, and of the facts stated on information and belief, I have a reasonable basis to believe them to be true.

In accordance with 28 U.S.C § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 13, 2014          By:__ _____          _____

David Vincent